1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                         DISTRICT OF NEVADA

8                                * * *

9    DERRICK BRADLEY,                    Case No. 3:13-cv-00432-MMD-VPC

10                          Petitioner,              ORDER

11        v.

12   RENEE BAKER, *et al.*,

13                          Respondents.

14

15        Before the Court for decision is a habeas corpus petition under 28 U.S.C. § 2254

16   brought by Derrick Bradley, a Nevada Prisoner. (ECF No. 20.)

17   **I.    PROCEDURAL BACKGROUND**[1]

18        Bradley seeks habeas relief from judgments of conviction in three separate but

19   related cases in the Eighth Judicial District Court in Clark County, Nevada.

20        Facing numerous charges in several cases, Bradley agreed to enter guilty pleas

21   to six counts of robbery with the use of a deadly weapon, with the parties stipulating to a

22   sentence of 12 to 30 years on each count, all to be served concurrently. Prior to

23   sentencing, Bradley moved to withdraw his guilty pleas. The state district court denied the

24   motions and, on April 29, 2010, sentenced Bradley.

25        Bradley appealed from the three separate judgments of conviction. The Nevada

26   Supreme Court consolidated Bradley's appeals and,  on January 13, 2011,  affirmed the

27   _____

28        [1]This procedural background is derived from the exhibits provided by the
     respondents at ECF Nos. 23-30 and this Court's own docket.

1  convictions but remanded the matter to correct a clerical error with respect to sentencing

2  in one of the three cases.

3  In June 2011, Bradley filed motions to modify or correct the sentences in the three

4  district court cases. The state district court denied the motions. Bradley appealed. On

5  November 18, 2011, the Nevada Supreme Court affirmed the denial of the motions.

6  Bradley then filed state petitions for writ of habeas corpus. The state district court

7  conducted an evidentiary hearing and, in April 2012, entered its findings of fact,

8  conclusions of law, and an order denying the petitions. Bradley appealed.

9  The Nevada Supreme Court consolidated the appeals and, on January 16, 2013,

10  affirmed the lower court's decision.

11  On or about August 7, 2013, Bradley submitted to this Court a petition for writ of

12  habeas corpus pursuant to 28 U.S.C. § 2254. On August 14, 2013, this Court granted

13  Bradley's motion to proceed *in forma pauperis* and ordered the Clerk to file the petition.

14  With leave of the Court, Bradley's amended petition was filed on April 30, 2014. That

15  petition is now before the Court for a decision on the merits.

16  **II.  STANDARDS OF REVIEW**

17  This action is governed by the Antiterrorism and Effective Death Penalty Act

18  (AEDPA). 28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

19        An application for a writ of habeas corpus on behalf of a person in
20  custody pursuant to the judgment of a State court shall not be granted with
    respect to any claim that was adjudicated on the merits in State court
21  proceedings unless the adjudication of the claim —

22        (1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as determined
23  by the Supreme Court of the United States; or

24        (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State
25  court proceeding.

26  28 U.S.C. § 2254(d).

27  A decision of a state court is "contrary to" clearly established federal law if the state

28  court arrives at a conclusion opposite that reached by the Supreme Court on a question

of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Miller–El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless

3

1  objectively unreasonable in light of the evidence presented in the state-court proceeding,

2  § 2254(d)(2).")." Because *de novo* review is more favorable to the petitioner, federal courts

3  can deny writs of habeas corpus under § 2254 by engaging in *de novo* review rather than

4  applying the deferential AEDPA standard. *Berghuis v. Thompkins*, 560 U.S. 370, 390

5  (2010).

6  **III.     DISCUSSION**

7        **A.     Ground One**

8        In Ground One, Bradley claims he received ineffective assistance of counsel, in

9  violation of his constitutional rights, because counsel failed to make a claim of

10  prosecutorial misconduct in relation to the State's identification procedure at a grand jury

11  hearing. According to Bradley, the prosecutor showed a photograph of him to a robbery

12  victim, Jeffrey Brown, prior to the hearing, then had Brown (who had previously been

13  unable to do so) pick him out of a photo line-up in front of the grand jury. Defense counsel

14  filed a pre-trial petition for writ of habeas corpus challenging the identification (ECF No.

15  24-4), but Bradley argues that counsel was ineffective by focusing only on "a single

16  charge of the crime," rather than his "defense as whole." (ECF No. 20 at 5.)

17        Ineffective assistance of counsel ("IAC") claims are governed by *Strickland v.*

18  *Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must satisfy two prongs

19  to obtain habeas relief — deficient performance by counsel and prejudice. 466 U.S. at

20  687. To meet the performance prong, a petitioner must demonstrate that his counsel's

21  performance was so deficient that it fell below an "objective standard of reasonableness."

22  *Id.* at 688. As to the prejudice prong, the court "must ask if the defendant has met the

23  burden of showing that the decision reached would reasonably likely have been different

24  absent [counsel's] errors." *Strickland*, 466 U.S. at 696. Put another way, a habeas

25  petitioner "must show that there is a reasonable probability that, but for counsel's

26  unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

27  To demonstrate ineffective assistance of counsel in the context of a challenge to a guilty

28  plea, a petitioner must show both that counsel's advice fell below an objective standard

4

of reasonableness as well as a "reasonable probability" that, but for counsel's errors, the petitioner would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985) (holding that the two-part *Strickland* test applies to challenges to guilty pleas based on the ineffective assistance of counsel).

In addressing Bradley's IAC claims in his state post-conviction proceeding, the Nevada Supreme Court correctly identified *Strickland/Hill* as the governing standard. (ECF No. 30-36 at 3.)[2] The court addressed the claim alleged herein as Ground One as follows:

> [A]ppellant claimed that trial counsel was ineffective for failing to adequately object to the State's identification procedure at the grand jury hearing. Appellant failed to demonstrate that counsel's performance was deficient, as counsel filed a pretrial petition for a writ of habeas corpus arguing that the State's identification procedure was impermissibly suggestive. To the extent that appellant claimed that counsel should have appealed the order denying the pretrial petition, there is no right to an interlocutory appeal from such an order. *Gary v. Sheriff*, 96 Nev. 78, 80, 605 P.2d 212, 214 (1980). Therefore, we conclude that the district court did not err in denying this claim.

(*Id.* at 3.)

The Nevada Supreme Court did not specifically address Bradley's assertion that counsel was ineffective for not bringing a broader prosecutorial misconduct claim, but this Court must nonetheless presume that the state court adjudicated, and rejected, that aspect of the claim on the merits for the purposes of § 2254(d). *See Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits.").

Even reviewed *de novo*, however, the claim falls well short of warranting habeas relief. Federal habeas claims of pre-plea ineffective assistance of counsel require a showing that the action, or inaction, of counsel prevented petitioner from making an informed choice whether to plead guilty. *Mahrt v. Beard*, 849 F.3d 1164, 1170 (9th Cir.

---

[2]Citations to page numbers for documents on this Court's electronic docket are based on CM/ECF pagination.

2017) (citing *Tollett v. Henderson*, 411 U.S. 258, 267–69 (1973)). Bradley's counsel ably challenged the prosecutor's conduct in relation to Brown's identification when she filed the pre-trial petition. Bradley has not proffered any evidence that alleged prosecutorial misconduct extended beyond the Brown identification. As such, Bradley has failed to establish that counsel performed below the constitutional standard or that her alleged omission impacted his choice whether to plead guilty.

Ground One is denied.

**B.     Ground Two**

In Ground Two, Bradley claims he received ineffective assistance of counsel, in violation of his constitutional rights, because counsel deceived him into believing that she had contacted a potential alibi witness when, in fact, she had not. According to Bradley, he informed counsel that he would plead guilty only if the alibi witness refused to testify. He further alleges that counsel informed him that she had contacted the witness and that the witness refused to testify, but that he later discovered, after entering his guilty pleas, this was not true.

The counsel in question, Wendy Leik, testified at Bradley's state post-conviction evidentiary hearing. (ECF No. 29-20.) She testified to the following facts. She had been working on Bradley's case for eight or nine months when he told her, less than ten days before his scheduled trial date, that his girlfriend and his aunt could vouch for his whereabouts. (*Id.* at 11-12.) As she was leaving the jail that day, before she had a chance to investigate the alibi, Bradley had a correctional officer call her back into the room, whereupon Bradley informed her that he had decided to accept the State's plea offer. (*Id.* at 15.) Notwithstanding Bradley's apparent change of heart, she still had her investigator contact Bradley's girlfriend. (*Id.* at 15-16.) The investigator called Leik back that same night and informed her that the girlfriend was unable to recall being with Bradley on the dates in question and indicated that she was not willing to lie for Bradley. (*Id.*) The investigator was unable to locate the aunt. (*Id.*) In addition, a police report indicated that
///

6

1 the girlfriend and the aunt had previously identified Bradley, albeit inadvertently, as the

2 person in a video of one of the robberies. (*Id.* at 17.)

3      The Nevada Supreme Court addressed the claim alleged herein as Ground Two

4 as follows:

5      [A]ppellant claimed that trial counsel falsely informed him that she
had contacted his alibi witnesses and that they were unwilling to testify,

6 which led him to plead guilty. Appellant failed to demonstrate that counsel's
performance was deficient. At the evidentiary hearing on this claim, counsel

7 testified that appellant had informed her a week before trial that his girlfriend
and his aunt would provide an alibi for him. Although appellant decided to

8 plead guilty, counsel attempted to contact his alibi witnesses anyway.
Appellant's girlfriend could not vouch for his whereabouts at the time of the

9 offenses, and counsel was unable to contact appellant's aunt, who had
previously been interviewed by the defense but had not volunteered an alibi.

10 Thus, contrary to appellant's claim, counsel did contact, or attempt to
contact, his alibi.

11

12 (ECF No. 30-36 at 3-4.)

13      Bradley has not rebutted the Nevada Supreme Court's factual determinations and

14 those determinations are reasonable in light of the evidence presented to the state court.

15 *See* 28 U.S.C. § 2254(d)(2) and (e)(1). Because the Nevada Supreme Court's decision

16 was neither contrary to the *Strickland/Hill* standard, nor was it an unreasonable

17 application of that standard, this Court must defer to it.

18      Ground Two is denied.

19     **C.    Grounds Three and Four**

20      In Grounds Three and Four, Bradley alleges that his constitutional rights were

21 violated when the state district court denied his motions to withdraw his guilty pleas. As

22 noted above, Bradley filed motions to withdraw his guilty pleas prior to sentencing.

23 Bradley claims that he provided "just cause" for the trial court to grant the motions and

24 that the trial court abused its discretion in denying them.

25      In moving to withdraw his guilty pleas, Bradley argued to the state district court

26 that, even though he had appointed counsel for each of his cases, Leik handled the entry

27 of pleas for all three of them. (ECF No. 25-17 at 4.) He claimed that he entered his guilty

28 pleas only because Leik coerced him by informing him that, if he did not accept the plea

1 | offer that day, he would spend the rest of his life in prison and someone else would be

2 | the father of this child. (*Id.* at 5.) He also claimed that Leik misled him about contacting

3 | his girlfriend and that he did not have an opportunity to discuss possible defenses or

4 | strategies with any of his attorneys. (*Id.* at 6.)

5 | The state district court entertained oral argument on the motions. (ECF No. 25-22.)

6 | In denying the motions, the state trial judge noted that Bradley had specifically requested

7 | that Leik represent him in all his pleas. (*Id.* at 10-15.) The judge also noted that he (the

8 | judge) had conducted an inordinately extensive plea canvass and that Bradley had

9 | displayed "absolutely no hesitancy" entering his pleas. (*Id.*)

10 | In deciding Bradley's direct appeal, the Nevada Supreme Court addressed the

11 | claim presented under Grounds Three and Four as follows:

12 | [A]ppellant Derrick K. Bradley contends that the district court abused
its discretion by denying his presentence motion to withdraw his guilty pleas.
13 | Bradley claims that his pleas were not entered voluntarily, knowingly, and
intelligently because they were the product of defense counsel Wendy
14 | Leik's coercion. A district court may grant a presentence "motion to withdraw
a guilty plea for any substantial, fair, and just reason." *Crawford v. State*,
15 | 117 Nev. 718, 721, 30 P.3d 1123, 1125 (2001); *see also* NRS 176.165. We
review the district court's ruling for abuse of discretion. *Crawford*, 117 Nev.
16 | at 721, 30 P.3d at 1125. Here, Bradley expressly asked to be represented
by attorney Leik in all of his cases and waived the presence of the other
17 | attorneys when entering his pleas. In each of the written plea agreements,
Bradley acknowledged that he signed the agreement voluntarily, was not
18 | acting under duress or coercion, understood the nature of the charges
against him, and understood the consequences of his plea. The district
19 | court conducted separate canvasses for each plea agreement. During each
canvass, Bradley acknowledged that no one forced, coerced, or threatened
20 | him in any manner. We conclude from the totality of the circumstances that
Bradley has failed to overcome the presumption that the district court
21 | correctly assessed the validity of his guilty pleas and has not demonstrated
that the district court abused its discretion by denying his presentence
22 | motion to withdraw his guilty pleas. *See id.* at 721-22, 30 P.3d at 1125-26.

23 | (ECF 26-29 at 2-3.)

24 | To the extent Grounds Three and Four challenge the trial court's exercise of

25 | discretion under state law, the claim is not cognizable as a federal habeas claim. *See*

26 | *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law

27 | . . . binds a federal court sitting in habeas corpus."). In addition, no U.S. Supreme Court

28 | case recognizes a constitutional right to withdraw a guilty plea. *See Carey v. Musladin*,

8

1  549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding the [issue

2  presented] here, it cannot be said that the state court unreasonabl[y] appli[ed] clearly

3  established Federal law.'").

4          There is U.S. Supreme Court precedent, however, recognizing a right under the

5  Due Process Clause to have one's guilty plea be both knowing and voluntary. *See Boykin*

6  *v. Alabama*, 395 U.S. 238, 242-43 (1969). The Court in *Boykin* held that, to satisfy this

7  requirement, the record must show that the defendant was made aware that he was

8  waiving his privilege against compulsory self-incrimination guaranteed by the Fifth

9  Amendment, the right to a trial by jury, and the right to confront one's accusers. *Id.* at 243.

10  The Court has identified other prerequisites for a plea to be considered knowing and

11  voluntary. For example, a guilty plea is voluntary for due process purposes only if a

12  defendant has received notice of the true nature of the charges against him. *Henderson*

13  *v. Morgan*, 426 U.S. 637, 645 (1976). In addition, a guilty plea is not "voluntary," and thus

14  invalid, when it is the product of threats, improper promises, or other forms of wrongful

15  coercion. *See Brady v. United States*, 397 U.S. 742, 754-55 (1970). Also, a plea of guilty

16  is voluntary and knowing only if it is "entered by one fully aware of the direct

17  consequences" of his plea. *Id.* at 755.

18          Bradley's claims that he was coerced or misled in relation to his guilty pleas are

19  not supported by the record. The guilty plea agreements he signed together with the trial

20  court's plea canvass satisfied the constitutional requirements set forth in the preceding

21  paragraph. (ECF Nos. 24-30, 25-3, 25-4 and 25-5.) Bradley has not overcome the strong

22  presumption that he understood the nature of the charges against him and the rights he

23  was waiving and that he voluntarily entered guilty pleas. *See Blackledge v. Allison*, 431

24  U.S. 63, 74 (1977) (holding that the petitioner's representations, as well as any findings

25  made by the judge accepting the plea, "constitute a formidable barrier in any subsequent

26  collateral proceedings" and that "[s]olemn declarations in open court carry a strong

27  presumption of verity").

28  ///

9

1         Based on the foregoing, this Court must defer to the Nevada Supreme Court's

2 decision under § 2254(d) because neither the reasoning nor the result of the decision

3 contradicts U.S. Supreme Court precedent. While the Nevada Supreme Court couched

4 its decision entirely in terms of state law, the standards it employed in denying relief were

5 no less protective of Bradley's rights (and perhaps more so) than the federal standards

6 discussed above. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that state court is

7 not required to cite U.S. Supreme Court cases, or even be aware of them, to avoid its

8 decision being "contrary to" U.S. Supreme Court precedent). In addition, the court's

9 findings of fact were reasonable in light of evidence presented in the state court

10 proceeding.

11         Grounds Three and Four are denied.

12     **D.    Ground Five**

13         In Ground Five, Bradley claims he received ineffective assistance of counsel, in

14 violation of his constitutional rights, because counsel Leik manipulated him into

15 consolidating all of his guilty pleas into one proceeding without his other two attorneys

16 being present and without explaining to him the potential dangers of doing so.

17         The Nevada Supreme Court addressed this claim as follows in Bradley's state

18 post-conviction proceeding:

19
20
21
22
23
> [A]ppellant claimed that trial counsel coerced him into consolidating his guilty pleas. Appellant failed to demonstrate that counsel's performance was deficient or that he was prejudiced. Appellant expressly asked the district court to take his pleas and sentence him in all three of his cases, and he also asked to be represented by trial counsel in all of his cases and waived the presence of his other attorneys when entering his pleas. Thus, his claim of coercion is belied by the record, and the district court did not err in denying this claim.

24 (ECF No. 30-36 at 5.)

25         The Nevada Supreme Court's findings are well-supported by the record. Two days

26 before entering his guilty pleas, Bradley filed a motion, *pro se*, asking the state district

27 court to dismiss one of his other attorneys and to appoint Leik in his stead. (ECF No. 24-

28 29.) At the plea hearing, the court confirmed with Bradley that it was his desire to have all

the proceedings handled together with one counsel before a single judge. (ECF 24-30 at 12-14.) At his post-conviction evidentiary hearing, Leik testified that Bradley had specifically asked her to stand in for the other attorneys with respect to entering pleas in the other two cases. (ECF No. 29-20 at 22.) Bradley has not proffered any evidence to support his claim that he was manipulated into this arrangement.

Here again, Bradley has not rebutted the Nevada Supreme Court's factual determinations and those determinations are reasonable in light of the evidence presented to the state court. *See* 28 U.S.C. § 2254(d)(2) and (e)(1). Because the Nevada Supreme Court's decision was neither contrary to the *Strickland/Hill* standard, nor was it an unreasonable application of that standard, this Court must defer to it.

Ground Five is denied.

**E.    Ground Six**

In Ground Six, Bradley claims that his decisions to consolidate his guilty pleas into one proceeding was not knowing, intelligent, and voluntary because neither his counsel, nor the court, informed him that, by doing so, he was waiving his right to withdraw his guilty pleas in the other two cases.

As mentioned above, there is no recognized constitutional right to withdraw one's guilty plea. The trial court conducted a separate canvass with respect to each of Bradley's three cases. (ECF No. 24-30.) As discussed above in relation to Grounds Three and Four, those canvasses and Bradley's plea agreements met the requirements imposed by *Boykin/Henderson/Brady*. The fact that the guilty pleas were consolidated into a single hearing, instead of three separate hearings, had no impact on whether Bradley would subsequently be able to withdraw any of his guilty pleas.

Ground Six is denied.

**F.    Ground Seven**

In Ground Seven, Bradley claims he received ineffective assistance of counsel, in violation of his constitutional rights, because counsel failed to request a dental expert to

///

11

1  rebut the State's theory that Bradley matched the description provided by witnesses who

2  noticed the perpetrator had unique teeth.

3  The Nevada Supreme Court addressed the claim contained in Ground Seven as

4  follows:

5  [A]ppellant claimed that trial counsel should have obtained a dental
   expert to rebut the State's theory that he committed the offenses. Appellant
6  failed to demonstrate that counsel's performance was deficient or that he
   was prejudiced. He failed to explain how a dental expert would have
7  assisted the defense or affected his decision to plead guilty. *See Molina v.
   State*, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004). Thus, the district court
8  did not err in denying this claim.

9  (ECF No. 30-36 at 4.)

10  "[T]he presentation of expert testimony is not necessarily an essential ingredient

11  of a reasonably competent defense." *Bonin v. Calderon*, 59 F.3d 815, 834 (9th Cir. 1995).

12  More importantly, Bradley has presented no evidence setting forth the testimony an

13  expert witness would have provided or demonstrating that it actually would have

14  supported his defense. *See Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001) (no

15  ineffective assistance of counsel for failing to retain expert where petitioner did not offer

16  evidence that expert would have testified). In addition, any speculation as to what an

17  expert would have said is not sufficient to show prejudice. *See Grisbv v. Blodgett*, 130

18  F.3d 365, 373 (9th Cir.1997) ("Speculation about what an expert could have said is not

19  enough to establish prejudice.").

20  Because the Nevada Supreme Court's decision was consistent with the foregoing

21  authority and neither contrary to the *Strickland/Hill standard*, nor an unreasonable

22  application of that standard, this Court must defer to it.

23  Ground Seven is denied.

24  **G.    Ground Eight**

25  In Ground Eight, Bradley claims he received ineffective assistance of counsel, in

26  violation of his constitutional rights, because counsel failed to have him evaluated by a

27  psychologist prior to entering his guilty pleas and failed to assist him when evaluations

28  she ordered after he entered his pleas showed that he had "relevant . . . psychological

1    issues." (ECF No. 20 at 18.) In support of this claim, Bradley refers to an evaluation

2    conducted in March 2010 at Leik's request, which, according to him, demonstrated that

3    he had trouble staying focused and paying attention. (ECF No. 34 at 65-74.)

4         The Nevada Supreme Court addressed the claim contained in Ground Eight as

5    follows:

6         [A]ppellant claimed that trial counsel was ineffective for failing to
         request a psychological examination before, rather than after, appellant
7         entered his guilty pleas. Appellant failed to demonstrate that his counsel's
         performance was deficient or that he was prejudiced. Appellant did not show
8         that he was unable to understand the proceedings or the consequences of
         his pleas, nor is there any indication in the record that appellant suffered
9         from a mental illness that would impair his ability to understand the legal
         proceedings before him. *See* NRS 178.400; *see also Godinez v. Moran*,
10        509 U.S. 389, 396-97 (1993). Therefore, the district court did not err in
         denying this claim.

11   (ECF No. 30-36 at 4.)

12        Bradley has not shown that a psychological evaluation would have benefited his

13   defense or that, but for counsel's failure to obtain a pre-plea psychological evaluation, he

14   would not have pled guilty and would have insisted on going to trial. The evaluation

15   conducted in March 2010 indicated that Bradley's diagnoses included a depressed mood

16   and a personality disorder with antisocial and narcissistic traits. (ECF No. 34 at 74.)

17   Beyond that, it is generally unremarkable and falls well short of demonstrating that

18   Bradley was incapable of understanding the proceedings. Moreover, Bradley does not

19   point to any fact or occurrence that would have prompted reasonable counsel to inquire

20   into his mental status, nor does the record contain evidence of such.

21        Because the Nevada Supreme Court's decision was neither contrary to the

22   *Strickland/Hill standard*, nor an unreasonable application of that standard, this Court must

23   defer to it.

24        Ground Eight is denied.

25   **H.    Ground Nine**

26        In Ground Nine, Bradley contends that his guilty pleas were not voluntary, knowing,

27   and intelligent because his counsel in the other two cases were not present to advise him

28   whether it was in his best interest to plead guilty and to consolidate pleas.

1    At the plea hearing, Bradley explicitly waived the presence of the other two

2  attorneys and consented to going forward with Leik on all three cases. (ECF No. 24-30 at

3  19.) And, as noted above in the discussion of Ground Five, Bradley had previously filed

4  a motion, *pro se*, asking the state district court to dismiss one of his other attorneys and

5  to appoint Leik in his stead. (ECF No. 24-29.) At the post-conviction evidentiary hearing,

6  Leik testified that she was in regular contact with Bradley's other attorneys and that she

7  had reviewed discovery in all of Bradley's cases in order to prepare for a pre-trial hearing

8  that would require her to cross-examine the detectives involved in all the cases. (ECF No.

9  29-20 at 8-9.)

10    In summary, Bradley affirmatively waived the presence of his other attorneys at

11  the plea hearing and he has not demonstrated how, specifically, their absence rendered

12  his pleas involuntary or unknowing.

13    Ground Nine is denied.

14    **I.    Ground Ten**

15    In Ground Ten, Bradley alleges that the prosecutor's conduct in relation to Jeffrey

16  Brown, as recounted above, rendered the grand jury proceeding unfair and rendered his

17  guilty plea involuntary.

18    The Nevada Supreme Court addressed the claim contained in Ten as follows:

19        Appellant also claimed that the State committed prosecutorial
    misconduct during the grand jury hearing. This claim was outside the scope
20  of claims permissible in a post-conviction petition for a writ of habeas corpus
    challenging a judgment of conviction based on a guilty plea. NRS
21  34.810(l)(a). Furthermore, appellant waived this claim when he entered his
    guilty plea. *See Webb v. State,* 91 Nev. 469, 470, 538 P.2d 164, 165 (1975)
22  (stating that the entry of a guilty plea generally waives any right to appeal
    from events occurring prior to the entry of the plea).

23

24  (ECF No. 30-36 at 5-6.)

25    The holding in *Webb* was premised on the rule in *Tollett* that "a plea represents a

26  break in the chain of events which has preceded it in the criminal process," so a defendant

27  who has entered a guilty plea "may not thereafter raise independent claims relating to the

28  deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *See*

1 | *Webb*, 538 P.2d at165 (quoting *Tollett*, 411 U.S. at 267). Ground Ten presents a textbook

2 | example of a claim barred under the *Tollett* rule. Indeed, *Tollett* itself involved a claim that

3 | petitioner's grand jury proceeding was defective. *See Tollett*, 411 U.S. at 269

4 | ("Respondent was not . . . entitled to release from custody solely by reason of the fact

5 | that the grand jury which indicted him was unconstitutionally selected.").

6 | Ground Ten is denied.

7 | **IV.    CONCLUSION**

8 | For the reasons set forth above, Bradley's petition for habeas relief is denied.

9 | *Certificate of Appealability*

10 | This is a final order adverse to the petitioner. As such, Rule 11 of the Rules

11 | Governing Section 2254 Cases requires this court to issue or deny a certificate of

12 | appealability ("COA"). Accordingly, the Court has *sua sponte* evaluated the claims within

13 | the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v.*

14 | *Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

15 | Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner

16 | "has made a substantial showing of the denial of a constitutional right." With respect to

17 | claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would

18 | find the district court's assessment of the constitutional claims debatable or wrong." *Slack*

19 | *v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4

20 | (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate

21 | (1) whether the petition states a valid claim of the denial of a constitutional right and (2)

22 | whether the court's procedural ruling was correct. *Id*.

23 | Having reviewed its determinations and rulings in adjudicating Bradley's petition,

24 | the Court declines to issue a certificate of appealability for its resolution of any procedural

25 | issues or any of Bradley's habeas claims.

26 | It is therefore ordered that Bradley's amended petition for writ of habeas corpus

27 | (ECF No. 20) is denied. The Clerk is directed to enter judgment accordingly.

28 | ///

1  It is further ordered that a certificate of appealability is denied.

2  DATED THIS 5th day of June 2017.

3

4  _____

MIRANDA M. DU
5  UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28